IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Pio, a married man, | No. CV-09-1443-PHX-SRB |
| Plaintiff, | **ORDER** |
| vs. | |
| Uneka Concepts, Inc., a California corporation; Edward ("Ernie") Schlitt and Amy Leigh Schlitt, a married couple; Adam K. Richardson and Kristie Lynne Richardson, a married couple; Christopher G. Palmer and Shaundra L. Palmer, a married couple; David Sayan Jeng and Jane Doe Jeng, a married couple; Paul D. Israelson and Diane Israelson, a married couple, | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 16).

**I.     BACKGROUND**

Plaintiff Brian Pio is an Arizona resident. (Doc. 15, Am. Compl. ¶ 1.) Defendant Uneka Concepts, Inc. ("Uneka") is a California corporation. (*Id*. ¶ 2.) Defendants Edward ("Ernie") Schlitt, David Sayan Jeng, and Paul D. Israelson ("Director Defendants") were directors or officers of Uneka at all relevant times. (*Id*. ¶¶ 3-6.) On or about January 5, 2005, Plaintiff and Uneka entered into a "Sales Representative Agreement." (*Id*. ¶ 16.) Pursuant to

the agreement, Plaintiff "solicit[ed] clients to enter into contracts for Uneka's products and services." (*Id.*) According to Plaintiff, the agreement stated that Uneka would pay Plaintiff a commission of forty percent of the net profits obtained from the customers Plaintiff solicited. (*Id.* ¶ 17.) Plaintiff states that the agreement defined net profits as "the difference between the price of the item sold and the Cost of Goods Sold (COGS)." (*Id.* ¶ 18.) Plaintiff also states the agreement required that he "agree to the COGS prior to quoting and closing of the sale with the customer," and that Uneka was to pay Plaintiff "his commission within fifteen (15) days after the pay period's end for that credited sale." (*Id.* ¶¶ 19-20.)

Plaintiff alleges that he performed his obligations under the agreement and that Defendants failed to fully pay his commissions as required by the agreement. (*Id.* ¶¶ 22, 24.) Plaintiff asserts that he demanded that Defendants pay his commissions, and after each demand Defendants refused to pay Plaintiff even though they sometimes acknowledged their debt to Plaintiff for unpaid commissions. (*Id.* ¶¶ 44-46.) Plaintiff also alleges that in an effort to defraud him, the Internal Revenue Service, and vendors, the Director Defendants "hatched a plan to maintain at least two sets of accounting books." (*Id.* ¶ 25.) He asserts that "[t]he scheme went as far back as at least 2005 and continued through [his] employment." (*Id.* ¶ 27.) He claims Mr. Schlitt and Mr. Israelson "designed and enacted" the plan, but that "the Directors were aware of [it]." (*Id.* ¶ 28.) Plaintiff claims that the Director Defendants used false numbers and "premature[]" payments to reduce the amount of commissions owed to him. (*Id.* ¶¶ 30, 39-40.) Plaintiff further alleges that from April 2008 to April 2009 the Director Defendants had foreign customers pay directly into personal offshore bank accounts and used those funds to pay personal expenses. (*Id.* ¶¶ 32-35.) Plaintiff claims the Director Defendants used Uneka business accounts for personal expenses. (*Id.* ¶ 43.) In addition to the plan to keep multiple sets of accounting books, Plaintiff alleges that the Director Defendants generally had control over other accounting methods, payment of commissions and payment to vendors. (*Id.* ¶¶ 24, 26, 28, 38, 40, 41, 46.) Finally, Plaintiff states that on February 6, 2009, Defendants formally terminated their agreement. (*Id.* ¶ 47).

On January 12, 2010, this Court dismissed the majority of Plaintiff's original

Complaint which set forth thirteen claims for relief against Uneka and five of its directors. (Doc. 12, Jan. 12, 2010 Order ("Order").) This Court dismissed two of the individual directors, Adam K. Richardson and Christopher G. Palmer, for lack of personal jurisdiction. (*Id.* at 6-7.) All Plaintiff's claims as to the remaining individual Director Defendants were dismissed for failing to adequately plead an alter ego theory. (*Id.* at 10-11.) This Court dismissed Plaintiff's fraud-based claims (Claims 4-7, 10, 13) for failing to plead with the particularity required by Federal Rule of Civil Procedure 9(b). (*Id.* at 8, 16-17.) This Court also dismissed Plaintiff's civil racketeering claim (Claim 9) for failure to allege facts showing a pattern of racketeering activity and for failure to meet Rule 9(b)'s particularity requirement. (*Id.* at 17.) Additionally, this Court dismissed Plaintiff's claims for conversion (Claim 8), unlawful distributions (Claim 11), and breach of the Trust Fund Doctrine (Claim 12), leaving only the claims for breach of contract (Claim 1), unjust enrichment (Claim 2), and breach of the implied covenant of good faith and fair dealing (Claim 3). (*Id.* at 12-14, 18). Finally, this Court restricted Claim 3 to contract remedies because "Arizona 'has consistently refused to recognize a tort action for breach of the implied covenant of good faith and fair dealing in the employment contract context.'" (*Id.* at 12, 18.)

On February 9, 2010, Plaintiff filed an amended complaint re-alleging claims for breach of contract (Claims 1-3), fraud (Claims 4-7, 9), civil racketeering (Claim 8), and alter ego liability. (Am. Compl. ¶¶ 52-53, 55-104.) Plaintiff's Amended Complaint also re-asserts Plaintiff's claim for tortious breach of the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 67-71.) In addition, Plaintiff asserts a new claim for treble damages pursuant to Arizona Revised Statute ("A.R.S.") § 23-355. (*Id.* ¶ 54.) Plaintiff names individual Defendants Mr. Schlitt, Mr. Jeng, and Mr. Israelson and refers to them collectively throughout the Amended Complaint as the "Directors." (*Id.* ¶ 6.)

Defendants move to dismiss Plaintiff's Claims 4, 5, 6, 7, 8, and 9 against all Defendants, contending that Plaintiff failed to plead with the particularity required by Federal Rule of Civil Procedure 9(b). (Doc. 16, Defs.' Mot. to Dismiss Am. Compl. ("Defs.' Mot.") at 4-8.) Additionally, pursuant to Federal Rule of Civil Procedure 12(b)(6),

1 Defendants move to dismiss Plaintiff's remaining claims, with the exception of the contract claims (Claims 1-3) against Uneka. (*Id.* at 2-4, 8-9.)

## II. Legal Standards and Analysis

### A. Motion to Dismiss for Failure to State a Claim

#### 1. Legal Standard

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a)(2). Thus, dismissal for insufficiency of a complaint is proper if the complaint fails to state a claim on its face. *Lucas v. Bechtel Corp.*, 633 F.2d 757, 759 (9th Cir. 1980). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

A Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In determining whether an asserted claim can be sustained, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). This presumption applies only to facts and "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)."[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret*

*Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1952). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

### 2. Plaintiff's Claims Against Individual Director Defendants

Plaintiff claims that he is entitled to pierce the corporate veil and hold the Director Defendants personally liable because they used Uneka as their alter ego. (Am. Compl. ¶¶ 52-53.) A plaintiff wishing to pierce the corporate veil must allege facts sufficient to support each element of the alter ego doctrine. *See, e.g.*, *Lacey v. Malandro Commc'n, Inc.*, No. CV-09-01429-PHX-GMS, 2009 WL 4755399, at *6 (D. Ariz. Dec. 8, 2009); *ING Bank, FSB v. Mata*, No. CV-09-748-PHX-GMS, 2009 WL 4672797, at *7 (D. Ariz. Dec. 3, 2009). Under Arizona law, "[t]he corporate fiction will be disregarded when [1] the corporation is the alter ego or business conduit of a person, and . . . [2] to observe the corporation would work an injustice." *Ize Nantan Bagowa, Ltd. v. Scalia*, 577 P.2d 725, 728 (Ariz. Ct. App. 1978). In order to properly allege alter ego liability and pierce the corporate veil, a plaintiff must do more than make conclusory statements regarding the alter ego relationship. *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003); *see also Twombly*, 550 U.S. at 555 (finding that "'entitle[ment] to relief' requires more than labels and conclusions" (citations omitted)).

#### a. Unity of Interest and Ownership

The first element of alter ego liability "is said to exist when there is such a unity of interest and ownership that the separate personalities of the corporation and the owners cease to exist." *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1978). Arizona courts consider various factors to determine whether the requisite unity of interest and ownership exists, including: commingling of personal and corporate assets, failure to keep funds from various entities separate, and unauthorized diversion of corporate assets for non-corporate purposes. *Ize Nantan*, 577 P.2d at 729 n.4.

Plaintiff does allege some of these factors in his Amended Complaint. (Am. Compl. ¶¶ 32-35, 43.) Specifically, Plaintiff alleges that Director Defendants diverted corporate

- 5 -

1 funds from April 2008 to April 2009 by instructing foreign Uneka customers to pay into
2 personal offshore accounts. (*Id.* ¶¶ 32-35.) Plaintiff also claims that Director Defendants used
3 business accounts to pay personal expenses. (*Id.* ¶ 43.) Additionally, the Amended Complaint
4 states that the Director Defendants approved a plan to keep multiple sets of accounting
5 books. (*Id.* ¶¶ 26, 28.) Finally, the Amended Complaint states that Director Defendants had
6 control over other accounting methods, payment of commissions and payment to vendors.
7 (*Id.* ¶¶ 24, 38, 40, 41, 46.)

### b. Observing the Corporate Form Would Work an Injustice

It is not enough that a plaintiff allege unity of interest and ownership to move forward on an alter ego theory; a plaintiff must also claim that to observe the corporate form would sanction a fraud or work an injustice. *Ize Nantan*, 577 P.2d at 728. "If a corporation was formed or is employed for fraudulent purposes then clearly the corporate fiction should be disregarded." *Dietel*, 492 P.2d at 457. However, "a legitimate purpose of incorporation is to avoid personal liability and if the corporate fiction is too easily ignored and personal liability imposed, then incorporation is discouraged." *Id.* The fact that a plaintiff did not receive the benefit of a bargain is not evidence of fraudulent conduct and is insufficient to disregard the corporate entity. *Ferrarell v. Robinson*, 465 P.2d 610, 613 (Ariz. Ct. App. 1970).

While Plaintiff does allege Defendants committed a number of fraudulent acts against him (Claims 4-9), he does not allege that observing the corporate form would sanction a fraud or work an injustice. Plaintiff merely makes a conclusory allegation that "the Directors individually and collectively used their alter-ego Uneka to perpetrate a fraud on [Plaintiff]" and therefore, "the Directors are personally liable." (Am. Compl. ¶¶ 52-53.) This conclusory statement is not sufficient to survive a motion to dismiss. *See Twombly*, 550 U.S. at 544.

### 3. Statutory Treble Damages

Defendants next move to dismiss Plaintiff's claim for treble damages under A.R.S. § 23-355, asserting that Plaintiff does not allege an employment relationship existed between

1  the parties.[1] A.R.S. § 23-355(a) provides that "if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages." "Employee" is defined as: "any person who performs services for an employer under a contract of employment either made in this state or to be performed wholly or partly within this state." A.R.S. § 23-350(2).

While the terms of the parties' contract are unknown, the parties do not dispute that there was an agreement whereby Plaintiff would perform work for Defendants. Plaintiff plainly states that he "entered into a Sales Representative Agreement" with Uneka. (Am. Compl. ¶ 16.) Defendants claim that the case is really only "a contract dispute over commissions between an independent contractor salesperson and the company with which he contracted." (Defs.' Mot. at 9.) While Defendants allege that Plaintiff is not an "employee" because the parties' contract states that Plaintiff is an independent contractor, contract language is not determinative of the relationship of the parties. *Santiago v. Phx. Newspapers, Inc.*, 794 P.2d 138, 141 (Ariz. 1990) (finding that a plaintiff was an employee despite being labeled an independent contractor in the agreement); *see also Indus. Comm'n v. Meddock*, 180 P.2d 580, 585 (Ariz. 1947) ("The employment status of parties is not determined by the appellation which they give it."). In any case, the Court does not have this document, and this is a question of fact that is inappropriately analyzed under the motion to dismiss standard. *See, e.g.*, *Clegg*, 18 F.3d at 754.

Additionally, Plaintiff makes some allegations suggesting that he was an employee. Specifically, Plaintiff alleges that Defendants used fraudulent methods to "avoid payments to . . . *employees*[] like [Plaintiff]." (Am. Compl. ¶ 36 (emphasis added).) As Plaintiff points out, he also uses the word "employment" to refer to the period in which Plaintiff was under contract with Uneka. (*Id.* ¶ 27.) Although Plaintiff's allegations are not conclusive, the

---

[1] Defendants claim that the reason Plaintiff makes no such allegation is because the parties' contract states that Plaintiff is an independent contractor, not an employee. (Defs.' Mot. at 3 n.2.) The parties' contract is not before this Court.

- 7 -

allegations in the Amended Complaint at least support the inference that an employment relationship existed. Since the Court cannot resolve this factual issue on a motion to dismiss, Defendants' Motion to Dismiss is denied as to Plaintiff's claim for statutory treble damages.

### 4. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff asserts that he is entitled to make a claim for tort damages for breach of the implied covenant of good faith and fair dealing. (Am. Compl. ¶ 70; Doc. 17, Pl.'s Resp. To Defs.' Mot. ("Pl.'s Resp.") at 3-4.) Arizona law implies a covenant of good faith and fair dealing in every contract. *See, e.g.*, *Wells Fargo Bank v. Ariz. Laborers*, 38 P.3d 12, 28 (Ariz. 2002) (citations omitted). However, a party bringing an action for breach of the implied covenant is limited to contract remedies, unless there is a "special relationship between the parties arising from elements of public interest, adhesion, and fiduciary responsibility." *Burkons v. Ticor Title Ins. Co. of Cal.*, 813 P.2d 710, 720 (Ariz. 1991). Arizona courts have "consistently refused to recognize a tort action for breach of the implied covenant of good faith and fair dealing in the employment contract context." *Smith v. Am. Express Travel Related Servs. Co.*, 876 P.2d 1166, 1175 (Ariz. Ct. App. 1994) (citing *Woerth v. City of Flagstaff*, 808 P.2d 297, 302-03 n.7 (Ariz. Ct. App. 1990)). In fact, the Arizona Supreme Court explicitly declined to extend tort recovery for the breach of the implied covenant of good faith and fair dealing to the employment context in *Wagenseller v. Scottsdale Memorial Hospital*, 710 P.2d 1025, 1040 (Ariz. 1985).

Plaintiff argues that because of the "reprehensible things" Defendants allegedly did – "giving him false reports, maintaining multiple sets of books, [and] diverting money to offshore accounts" – this Court should allow Plaintiff to proceed on his claim for tort damages despite the case law to the contrary. (Pl.'s Resp. at 4.) Plaintiff asks this court to "recognize that these Defendants' acts are special and unique and constitute more than a simple breach of contract" and insists that "the reasoning and holdings of *Wagenseller* [do not] prohibit such recognition." (*Id.*)

Plaintiff does not allege that he has a "special relationship" warranting his claim for

- 8 -

tort damages, and no special relationship appears to exist. Therefore, his claim for tort damages arises solely out of an alleged breach of an employment-type contract. Arizona law does not permit such a claim. *See, e.g.*, *Smith*, 876 P.2d at 1175 (citing *Woerth*, 808 P.2d at 302-03 n.7); (*see also* Order at 12 (finding that Plaintiff cannot recover tort damages for this claim because it is based on his employment contract with Defendants).)

Furthermore, Plaintiff's arguments relating to Defendants alleged "reprehensible conduct" are without merit.[2] While it may be true that *Wagenseller* does not prohibit this Court from recognizing that "Defendants' acts are special and unique," *Wagenseller* in no way authorizes this Court to allow Plaintiff to proceed on a cause of action that other Arizona courts have "consistently refused" to allow. *See Smith*, 876 P.2d at 1175 (citing *Woerth*, 808 P.2d at 302-03 n.7). As there are no facts supporting a cognizable legal theory to support Plaintiff's cause of action, this Court grants Defendants' Motion to Dismiss with respect to Plaintiff's claim for tortious breach of the implied covenant of good faith and fair dealing. *See Balistreri*, 901 F.2d at 699; *Robertson*, 749 F.2d at 534. Thus, Plaintiff's remedy on this claim is limited to contract damages.

**B.     Motion to Dismiss for Failure to Adequately Plead Fraud**

**1.     Legal Standard and Analysis**

Defendants move to dismiss all of Plaintiff's fraud-based claims pursuant to Rule 9(b).[3] To maintain an action for fraud under Arizona law, a plaintiff must sufficiently plead:

---

[2] Plaintiff also points to *Huey v. Honeywell, Inc.* for the proposition that "Arizona courts have held employers liable both in contract and tort for the breach of the implied covenant of good faith and fair dealing." (Pl.'s Resp. at 4 (citing 82 F.3d 327, 331 (9th Cir. 1996)).) However, upon closer examination, the Ninth Circuit's statement in *Huey* is overbroad in light of how Arizona courts have actually applied the law. *See Wagenseller,* 710 P.2d at 1031, 1040. In addition, other than the sentence mentioned above, the *Huey* court did not discuss the issue of allowing tort damages for a breach of the implied covenant of good faith and fair dealing.

[3] Defendants move for dismissal of the following claims based on Rule 9(b): (4) fraudulent misrepresentation, (5) fraudulent concealment, (6) fraudulent non-disclosure, (7) civil conspiracy to commit fraud, and (8) civil racketeering. (Defs.' Mot. at 4-8.) The civil

(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably calculated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) a consequent and proximate injury.

*Nielson v. Flashberg*, 419 P.2d 514, 517-18 (Ariz. 1966). "In order to determine whether the elements are present, a court looks to the face of the complaint." *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1027 (D. Ariz. 2003) (citing *Stewart v. Phoenix Nat'l Bank*, 64 P.2d 101, 105 (Ariz. 1937)). The absence of any one of these elements in the complaint is fatal to a plaintiff's claim. *See id.* at 1028.

The Federal Rules of Civil Procedure generally require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "However, when alleging fraud or misrepresentation, Rule 9(b) provides an exception to Rule 8's liberal [pleading] requirements." *Arnold & Assocs.*, 275 F. Supp. 2d at 1028 (citing *Wyatt v. Terhune*, 315 F.3d 1108, 1118 (9th Cir. 2003)). Rule 9 states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Statements of the time, place, and nature of the alleged fraudulent activities are sufficient," but conclusory allegations of fraud are not. *Arnold & Assocs.*, 275 F. Supp. 2d at 1028 (citations omitted). In addition, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (citations and quotations omitted). The heightened pleading standard of Rule 9

> serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

*Bly-Magee v. Cal.*, 236 F.3d 1014, 1018 (9th Cir. 2001) (quoting *In re Stac Elecs. Secs. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)). Additionally,

---

racketeering claim is discussed below.

- 10 -

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.

*Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal quotations omitted).

Here, Defendants argue that Plaintiff did not meet Rule 9(b)'s particularity requirement because Plaintiff "fails to allege a specific fraudulent statement made to Plaintiff by any identifiable Defendant." (Defs.' Mot. at 5.) The case law supports Defendants' argument. Plaintiff does not attribute specific misconduct to Defendants, rather he refers to all three Director Defendants as "the Directors." (*See, e.g.*, Am. Compl. ¶¶ 30-35.) "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz*, 476 F.3d at 764. If Plaintiff is in fact alleging that all three Director Defendants engaged in the same fraudulent conduct at the exact same time, he must explicitly say so in order to comply with Rule 9(b)'s purpose of "inform[ing] each defendant *separately* of the allegations surrounding his alleged participation in the fraud." *Id.* at 764-65 (emphasis added) (internal quotations omitted).

Furthermore, Plaintiff does not satisfy Rule 9(b) because he failed to set forth particular facts with respect to the alleged fraudulent conduct. For example, Plaintiff claims that "the Directors . . . show[ed] vendors and employees false numbers and issue[d] payments based on the fabricated figures." (Am. Compl. ¶ 30.) Additionally, Plaintiff states that "the Directors would consistently refuse to provide documentation to [him]." (*Id.* ¶ 37.) But nowhere in the Amended Complaint does it state where or under what circumstances Defendants took these actions. Plaintiff also does not allege when these actions were taken other than to say that the plan to keep multiple sets of accounting books "went as far back as at least 2005 and continued through [his] employment," which ended on February 6, 2009. (*Id.* ¶¶ 27, 47.) Because Plaintiff fails to plead all of the elements of fraud with the particularity required by Rule 9(b), this Court grants Defendants' Motion to Dismiss with respect to the fraud-based claims.

### 2. Relaxed Standard

Plaintiff argues he is entitled to a lenient application of Rule 9(b) because, among other things, additional facts are peculiarly within Defendants' control. (Pl.'s Resp. at 7.) The Ninth Circuit[4] has said that "Rule 9(b) may be relaxed to permit discovery in a *limited class* of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession." *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (emphasis added) (citations omitted). "In such cases, the plaintiff may base her allegations on knowledge and belief, 'if the allegations are accompanied by a statement of the facts upon which the belief is founded.'" *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 998 (N.D. Cal. 2009) (quoting *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), *superseded by statute on other grounds*, Private Securities Litigation Reform Act, 15 U.S.C.A. § 78u-4(b)(1) (West 2010). The Ninth Circuit has applied this relaxed standard in securities fraud cases and has discussed the option of applying it in Federal Claims Act cases. *See Lee*, 245 F.3d at 1052; *Deutsch v. Flannery*, 823 F.2d 1361, 1366 (9th Cir. 1987).

Plaintiff's essential allegation is that the Director Defendants kept doctored accounting records and used these false numbers to pay Plaintiff less commissions than actually owed per the agreement. (*See* Am. Compl. ¶¶ 26, 30-31.) While Plaintiff's Response argues that particular facts are solely in Defendants control, Plaintiff does not accompany any of his allegations with "a statement of the facts upon which the belief is founded." *Marolda*, 672 F. Supp. 2d at 998 (citations and quotations omitted). Moreover, while it may be true that some of these facts are exclusively in Defendants' control, many of Plaintiff's allegations

---

[4]Plaintiff relies on the law of other jurisdictions for his argument that he is entitled to a lenient application of Rule 9(b), though the law is substantially similar to the Ninth Circuit. The cases Plaintiff cites offer little or no support for his arguments. For example, Plaintiff cites *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1050-51 (7th Cir. 1998). In *Corley*, the court relaxed Rule 9(b)'s requirements only with respect to unnamed third-parties to whom the defendants also allegedly made fraudulent statements, and not with respect to the fraudulent statements allegedly made to the plaintiffs. *Id.*

involve situations where he was present. For example, there is no apparent reason why Plaintiff cannot allege the date, location and circumstances when Director Defendants "show[ed] vendors and employees false numbers and issue[d] payments based upon those fabricated figures." (Am. Compl. ¶ 30.) To relax the pleading standard to the extent that Plaintiff requests, this Court would be completely ignoring the purpose of Rule 9(b): "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Bly-Magee*, 236 F.3d at 1018 (quoting *In re Stac Elecs.*, 89 F.3d at 1405). Since Plaintiff has not properly alleged that the facts underlying his fraud claim are exclusively within Defendants control, this Court refuses to apply a relaxed pleading standard.

### 3. Arizona Civil Racketeering Statute

Defendants move to dismiss Plaintiff's claim for relief based on Arizona's civil racketeering statute ("RICO") (Claim 8), arguing Plaintiff failed to properly plead this claim. (Defs.' Mot. at 7-8.) A.R.S. § 13-2314.04(A) creates a private cause of action for "[a] person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity, or by a violation of § 13-2312 involving a pattern of racketeering activity." A.R.S. § 13-2314.04(A). A "pattern of racketeering activity" is:

> a) At least two acts of racketeering as defined in § 13-2301, subsection D, paragraph 4, subdivision (b), item (iv), (v), (vi), (vii), (viii), (ix), (x), (xiii), (xv), (xvi), (xvii), (xviii), (xix), (xx), (xxiv) or (xxvi) that meet the following requirements:
>
> (I) The last act of racketeering activity that is alleged as the basis of the claim occurred within five years of a prior act of racketeering.
>
> (ii) The acts of racketeering that are alleged as the basis of the claim were related to each other or to a common external organizing principle, including the affairs of an enterprise. Acts of racketeering are related if they have the same or similar purposes, results, participants, victims or methods of commission or are otherwise interrelated by distinguishing characteristics.
>
> (iii) The acts of racketeering that are alleged as the basis of the claim were continuous or exhibited the threat of being continuous.

A.R.S. § 13-2314.04(T)(3).

Plaintiff alleges that Defendants committed two racketeering acts as defined by A.R.S. § 13-2301(D)(4)(b): (v) theft, and (xx) a scheme or artifice to defraud. (Am. Compl. ¶¶ 95-96.) Essentially, Plaintiff alleges that Defendants stole his commissions through a fraudulent scheme. (*See id*. ¶¶ 26, 30, 39-40, 95-96.) When a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Thus, because Plaintiff's RICO claim is based in fraud, his pleading must meet Rule 9(b)'s particularity requirement. *See, e.g.*, *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (applying Rule 9(b)'s standard to plaintiff's federal RICO claims based on securities fraud); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (applying Rule 9(b)'s standard to plaintiff's federal RICO claims based on mail and wire fraud).

As discussed above, Plaintiff fails to plead fraud with particularity. Plaintiff's allegations that Defendants withheld his commissions through a fraudulent scheme – which involved keeping two sets of accounting books and using fabricated figures to calculate commissions – are severely lacking in particular facts. Plaintiff does not allege specifically which Defendant took which actions nor does he state when these actions were taken other than to say that the plan to keep two sets of accounting books began "at least" when Plaintiff was hired in 2005 and continued through the end of his employment on February 6, 2009. (Am. Compl. ¶¶ 27, 47.) Therefore, Plaintiff's RICO claim is dismissed for failing to meet Rule 9(b)'s particularity requirements.

**IT IS ORDERED** granting in part and denying in part Defendants' Motion to Dismiss pursuant to Rules 9(b) and 12(b)(6) (Doc. 16).

**Claims 1** (breach of contract), **2** (unjust enrichment), and **3** (breach of the implied covenant of good faith and fair dealing) are dismissed without prejudice as to all individual Director Defendants, but not dismissed as to Uneka. However, Claim 3 is limited to contract

remedies.

**Claims 4** (fraudulent misrepresentation), **5** (fraudulent concealment), **6** (fraudulent non-disclosure), **7** (civil conspiracy to commit fraud), **8** (Arizona RICO), and **9** (negligent misrepresentation) are dismissed without prejudice as to all Defendants.

DATED this 28th day of June, 2010.

_____
Susan R. Bolton
United States District Judge